G3O7TRUP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                        14 Cr. 652 (PGG)(AJP)

LUIS TRUJILLO,

             Defendant.

------------------------------x

                          New York, N.Y.
                          March 24, 2016
                          11:15 a.m.

Before:

                 HON. ANDREW J. PECK
                               Magistrate Judge

                    APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
BY:  JUSTINE GERACI
    Assistant United States Attorney

JENNIFER BROWN
    Attorney for Defendant

ALSO PRESENT:  STEVEN BERGER, NYPD

        (Case called)

        (In open court)

        THE COURT:  Be seated.

        MS. GERACI:  Good morning, your Honor.  Justine Geraci

for the government.  I'm joined at counsel table by Detective

G3O7TRUP

1   Steven Berger, with the New York City Police Department Cold

2   Case Squad.

3           MS. BROWN:  Good morning, your Honor.  Jennifer Brown

4   on behalf of Mr. Trujillo.

5           THE COURT:  All right.  Mr. Trujillo, please stand.

6   Is this your signature on the consent to proceed form?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  Before you signed it, did Ms. Brown

9   explain to you that you have the right to have your plea heard

10  by Judge Gardephe but that if you consented -- as it appears

11  you have -- I can hear your plea, and I will make a

12  recommendation to Judge Gardephe?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And you have agreed to that?  I saw your

15  head nod; I'm not sure I heard the answer.  Was that a yes?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Thank you.  Please raise your right hand.

18          (Defendant sworn)

19          THE COURT:  All right.  Put your hand down, remain

20  standing.  State your full name for the court reporter's

21  transcript.

22          THE DEFENDANT:  My name is Luis Julian Trujillo.

23          THE COURT:  Are you a United States citizen, sir?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  What is the last grade of schooling that

G3O7TRUP

1       you completed?

2                THE DEFENDANT:  12th grade.

3                THE COURT:  And have you got a high school degree?

4                THE DEFENDANT:  No.

5                THE COURT:  But you got to the 12th grade.

6                THE DEFENDANT:  Yes.

7                THE COURT:  Are you recently or currently under the

8       care of a doctor, a psychiatrist or any other medical or mental

9       health professional?

10               THE DEFENDANT:  No, your Honor.

11               THE COURT:  Have you ever been treated for drug

12      addiction or alcohol addiction?

13               THE DEFENDANT:  No, your Honor.

14               THE COURT:  Have you taken any drugs or medicine

15      yesterday or today, even anything as simple as an aspirin?

16               THE DEFENDANT:  No, your Honor.

17               THE COURT:  Do you feel physically and mentally all

18      right and able and willing to proceed in court today?

19               THE DEFENDANT:  Yes, your Honor.

20               THE COURT:  Are you having any difficulty seeing or

21      hearing or understanding what I'm saying to you?

22               THE DEFENDANT:  No, not at all, your Honor.

23               THE COURT:  Promise me now that if at any point today

24      you don't understand what I'm asking you or what I'm telling

25      you, you won't guess or try to fake your way through it; you

G3O7TRUP

```
1    will feel comfortable asking me to be louder, or clearer, or

2    both as necessary.  OK?

3              THE DEFENDANT:  I promise.

4              THE COURT:  All right, very good.

5              We need to take your waiver of indictment with respect

6    to the S2 superseding information.  Please answer the clerk's

7    questions.

8              DEPUTY COURT CLERK:  You are Luis Trujillo.

9              THE DEFENDANT:  Yes, sir.

10             DEPUTY COURT CLERK:  Have you signed this waiver of

11   indictment?

12             THE DEFENDANT:  Yes, sir.

13             DEPUTY COURT CLERK:  Before you signed it, did you

14   discuss it with your attorney?

15             THE DEFENDANT:  Yes, sir.

16             DEPUTY COURT CLERK:  Did your attorney explain it to

17   you?

18             THE DEFENDANT:  Yes, sir.

19             DEPUTY COURT CLERK:  Do you understand what you are

20   doing?

21             THE DEFENDANT:  Yes, sir.

22             DEPUTY COURT CLERK:  Do you understand you are under

23   no obligation to waive indictment?

24             THE DEFENDANT:  Yes, sir.

25             DEPUTY COURT CLERK:  Do you understand if you do not
```

G3O7TRUP

1    waive indictment, if the government wants to prosecute you,

2    they will have to present this case to a grand jury which may

3    or may not indict you?

4                THE DEFENDANT:  Yes, sir.

5                DEPUTY COURT CLERK:  You understand by signing this

6    waiver of indictment, you have given up your right to have your

7    case presented to a grand jury?

8                THE DEFENDANT:  Yes.

9                DEPUTY COURT CLERK:  Do you understand what a grand

10   jury is?

11               THE DEFENDANT:  Yes.

12               DEPUTY COURT CLERK:  Have you received a copy of the

13   information?

14               THE DEFENDANT:  Yes.

15               DEPUTY COURT CLERK:  Do you waive its public reading?

16               THE DEFENDANT:  Yes.

17               THE COURT:  For the record, you have seen the S2

18   information, correct?

19               THE DEFENDANT:  Yes.

20               THE COURT:  All right.  Have you discussed that with

21   Ms. Brown and talked about how you might wish to plead?

22               THE DEFENDANT:  Yes, sir.

23               THE COURT:  And are you satisfied with the

24   representation that she has given and is providing to you?

25               THE DEFENDANT:  Yes, your Honor.

G3O7TRUP

1          THE COURT:  All right.  At this point what is your

2     plea?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  All right.  I'm going to ask you some

5     questions to make sure you understand the charges you are

6     facing and some of the consequences of pleading guilty, and at

7     the end of that I will ask you if you still wish to plead

8     guilty or not.

9          Do you understand you are charged in Count One with

10     agreeing with others to distribute and possess with intent to

11     distribute mixtures containing cocaine?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And do you understand that that carries a

14     maximum of 20 years' imprisonment; a maximum of lifetime

15     supervised release and a mandatory minimum of three years'

16     supervised release; maximum fine of a million dollars, or twice

17     the gross gain or loss from your offense; a $100 mandatory

18     special assessment; and court ordered restitution?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And do you know that you have the right to

21     plead not guilty and the right to a public jury trial on these

22     charges?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Do you understand that if you were to

25     plead not guilty and go to trial, you would be presumed

G3O7TRUP

1    innocent unless and until the prosecutors proved your guilt by

2    the standard of beyond a reasonable doubt?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  At a trial, you have the right to be

5    represented by counsel at all times and at all stages leading

6    up to the trial and, if necessary, Ms. Brown or another

7    attorney will be appointed for you free of charge.  Do you

8    understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand that you have the right

11   at a trial, yourself and through your attorney, to confront and

12   question anyone who testifies against you, and you also have

13   the right to call witnesses to testify for you, and, if

14   necessary, the court would subpoena them to get them to trial?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Do you understand that no one could force

17   you to incriminate yourself at the trial, meaning no one could

18   force you to testify if you didn't want to; but, on the other

19   hand, if after getting Ms. Brown's legal advice you wanted to

20   testify, you would have the absolute right to do so?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And do you understand that if you do

23   continue to plead guilty today, that means there will be no

24   trial of any kind; so you're giving up your right to a public

25   jury trial and waiving any defenses you may have and any claims

G3O7TRUP

1    that your constitutional rights may have been violated?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Have you talked with Ms. Brown?  Has she

4    explained to you how the U.S. Sentencing Commission guidelines

5    and the additional sentencing factors in Title 18 U.S. Code,

6    Section 3553 may apply to your case?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you understand that Judge Gardephe is

9    obligated to calculate the applicable sentencing guideline

10   range, to consider that range, to consider any departures under

11   the guidelines and to consider all the sentencing factors in

12   Section 3553?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Among the factors that the court will take

15   into account in sentencing you are the conduct you engaged in,

16   the victim of the offense, your role in the offense, whether

17   you have accepted responsibility for your acts, whether you

18   have any other criminal history, and whether you have

19   obstructed justice in any way.  Do you understand that?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Between now and the date of sentencing,

22   the probation department will conduct an investigation and

23   prepare a presentence report.  You and Ms. Brown will get

24   copies of that, as will the prosecutors and Judge Gardephe.  If

25   you or Ms. Brown on the one hand or the prosecutors on the

G3O7TRUP

other believe anything in the presentence report is incorrect

or inaccurate, each side can file objections with the court.

Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that Judge Gardephe

won't be able to determine what sentencing guidelines or other

3553 sentencing factors apply to you until that report is

prepared and any objections filed and ruled on?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  As the term sentencing guidelines implies,

and as the Supreme Court has made clear, they're guideline and

not mandatory, and so Judge Gardephe can give you a sentence

within the guideline range, less than the guideline range or

greater than the guideline range, but of course not greater

than the statutory maximum.  Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you also understand that under some

circumstances, subject to the limitations in your plea

agreement letter -- that we will get to in a minute -- that you

and/or the government may have the right to appeal from any

sentence you get?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  I don't know what sentence you are hoping

for or wishing for as you stand here today, but do you

understand that even if Judge Gardephe gives you a sentence

G3O7TRUP

1    more severe than that, you will still be bound by your guilty

2    plea and not allowed to withdraw it?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  In the federal system parole has been

5    abolished, so if you are sentenced to prison, you will not be

6    released early on parole.  Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  And do you understand that if you are

9    sentenced to a term of supervised release and violate any of

10   the conditions of that release, you face additional punishment,

11   including additional imprisonment up to the maximum allowed by

12   law?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  I'm not sure if I asked you this before,

15   and if so, I have forgotten the answer, or I skipped it, but

16   are you a United States citizen, sir?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Good.  Do you understand that in addition

19   to the criminal law consequences we have been talking about,

20   there are civil consequences to a felony conviction, such as

21   the loss of voting rights, loss of opportunity to hold certain

22   jobs or licenses, etc.?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And do you understand finally that the

25   answers you have been and will give me today can be used

G3O7TRUP

1    against you in a prosecution for perjury or false statements if

2    you're not telling me the truth?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Mr. Trujillo, has anyone made any threats

5    to you, or anybody else, to convince or influence you to plead

6    guilty?

7            THE DEFENDANT:  No, your Honor.

8            THE COURT:  All right.  I have been handed a copy of

9    your plea agreement letter dated February 3 on the first page

10   and signed by you and Ms. Brown on the sixth and final page,

11   today, March 24.  Other than what is contained in the plea

12   agreement, has anyone made any promises to you or anybody else

13   to convince or influence you to plead guilty?

14           THE DEFENDANT:  No, your Honor.

15           THE COURT:  In particular -- and this is going to

16   sound redundant -- it is, but I have to ask you -- has anyone

17   made any promise to you as to the specific sentence you are

18   going to get from Judge Gardephe?

19           THE DEFENDANT:  No, your Honor.

20           THE COURT:  Is this your signature on the last page of

21   the plea letter?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  And before you signed it, did Ms. Brown go

24   through it with you and explain it all to you?

25           THE DEFENDANT:  Yes, your Honor.

G3O7TRUP

1          THE COURT:  All right.  I'm going to ask you a few

2    questions about the plea letter.  Even if I don't cover

3    something, you are still going to be bound by it as long as you

4    continue to plead guilty.

5          Do you understand that you have agreed to make certain

6    allocutions during your guilty plea with respect to

7    codefendants and use of a gun, etc.?  And we will hear more

8    from you on that when I get to your allocution.

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  And do you understand that you have agreed

11    to waive the statute of limitations with respect to Count One?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  And do you also understand that you are

14    admitting to the forfeiture allegation with respect to Count

15    One, meaning certain property or money or both will be

16    forfeited to the government?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  And do you understand that you have

19    stipulated and agreed with the prosecutors to a sentencing

20    guideline of 240 months' imprisonment?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  And do you understand that you have agreed

23    not to file a direct appeal or a collateral challenge,

24    including challenges under 28 U.S. Code 2241 or 2255 from any

25    sentence at or below that range of 240 months?

G3O7TRUP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And do you also understand that you have

3    agreed not to seek to withdraw your plea or attack your

4    conviction on direct appeal or collaterally on the ground that

5    the government failed to produce discovery material, Jencks Act

6    material, exculpatory material or impeachment material?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And there is a paragraph in here that if

9    you are not a U.S. citizen -- although you are -- you would

10   face deportation, which is presumptively mandatory, and you

11   would not have the right to withdraw your plea based on any

12   immigration consequences, even though it probably doesn't

13   apply.  You understand that.

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Ms. Geraci, any additional questions you

16   would suggest?

17         MS. GERACI:  No, your Honor.

18         THE COURT:  Now that we have gone through the plea

19   agreement and some of the other rights you are giving up by

20   pleading guilty, and some of the other consequences, do you

21   still wish to plead guilty?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And are you doing so freely and

24   voluntarily because you are guilty?

25         THE DEFENDANT:  Yes, your Honor.

G3O7TRUP

1      THE COURT:  Ms. Brown, have you discussed with Mr.

2  Trujillo the consequences of pleading guilty?

3      MS. BROWN:  Yes, your Honor.

4      THE COURT:  And based on the discovery you have

5  received from the prosecutors, your investigation and what you

6  have learned from your client, is it your opinion that he is

7  pleading guilty because he is guilty?

8      MS. BROWN:  Yes, your Honor.

9      THE COURT:  Please tell me in your own words, Mr.

10  Trujillo, what it is you did to commit this crime.

11      THE DEFENDANT:  In 2002, I agreed with another person

12  to assist with the distribution of cocaine.  In August 2002, my

13  sister's boyfriend Tito had a dispute with a guy named Andy

14  over drug territory.  On August 11, 2002, in the Bronx, I drove

15  Tito and another person who I knew as Popeye while they

16  searched for Andy.  When we got to the area of Franklin Avenue

17  and 169th Street, both Tito and Popeye shot Andy and killed

18  him.  I knew at the time what I was doing was wrong and

19  illegal.

20      THE COURT:  All right.  And the Andy you're referring

21  to is Andrew Belkairen?

22      THE DEFENDANT:  Yes, your Honor.

23      THE COURT:  Any additional questions or any proffer

24  from the prosecution, Ms. Geraci?

25      MS. GERACI:  No additional questions, but I'm happy to

G3O7TRUP

1    make a proffer.  Your Honor, the government would show if this

2    case went to trial the following three elements beyond a

3    reasonable doubt as to Count One of the S2 information:

4            First, that two or more persons agreed or conspired to

5    distribute or possess with the intent to distribute one or more

6    controlled substances, specifically mixtures and substances

7    containing a detectable amount of cocaine;

8            Second, that this defendant was a party to or a member

9    of that agreement or conspiracy, and

10            Third, that this defendant joined the agreement or

11    conspiracy knowing of its objective, which was to distribute or

12    possess with the intent to distribute cocaine, and intended to

13    join together with at least one other alleged conspirator to

14    achieve that objective.

15            The government would further show venue by showing

16    this crime occurred in the Bronx, New York.

17            Lastly, with respect to the allocution, concerning the

18    death of Andrew Belkairin, the government would show that in

19    connection with the cocaine distribution conspiracy in 2002

20    that the defendant and his coconspirators had an ongoing

21    dispute with the victim Andrew Belkairin, who the defendant

22    refers to as Andy; that on or about August 11, 2002 the

23    defendant drove his coconspirators who were armed with firearms

24    to find Mr. Belkairin, and that they intended to shoot him to

25    resolve this dispute.  Finally, when they found him in the

G3O7TRUP

1    vicinity of Franklin Avenue and East 169th Street in the Bronx,

2    the defendant's coconspirators discharged firearms at

3    Mr. Belkairin, striking and killing him.

4              THE COURT:  All right.  And, Mr. Trujillo, just so we

5    make sure the Is are dotted and Ts crossed, the agreement to

6    distribute cocaine, you referred to you were in the Bronx when

7    you were dealing with that.

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  All right.  I'm satisfied that you

10   understand the nature of the charges against you and the

11   consequences of pleading guilty, and I'm also satisfied your

12   plea is being made freely, voluntarily and knowingly, and that

13   there is a factual basis for the plea.  I therefore recommend

14   to Judge Gardephe that he accept your plea of guilty to Count

15   One of the information.

16             Has the date for sentencing been set, Ms. Geraci?

17             MS. GERACI:  Your Honor, not by Judge Gardephe, but I

18   have spoken with defense counsel and we would like a control

19   date of July 11, 2016.  I will call the Judge Gardephe's

20   chambers and see if that's doable for them.

21             THE COURT:  A control date of July 11 for your

22   sentencing.  Most likely that will change, and when it does

23   Ms. Brown will be notified and she will tell you.

24             In the meantime I direct that a presentence report be

25   prepared.  I direct both the government and the defense to

G3O7TRUP

 1    within the 14 day trigger period submit their information to

 2    the probation staff.

 3            You will need to meet with the probation staff, Mr.

 4    Trujillo, and answer their questions, because that's a critical

 5    part of the sentencing phase of your case.  You understand that

 6    and will cooperate, right?

 7            THE DEFENDANT:  Yes, your Honor.

 8            THE COURT:  Ms. Brown, do you wish the clerk to mark

 9    the file that any such interview only take place in the

10    presence of yourself or one of your colleagues?

11            MS. BROWN:  Yes, your Honor.

12            THE COURT:  All right, that will be so marked.

13            Bail?  It appears that Mr. Trujillo is out on bail; is

14    that correct?

15            MS. GERACI:  He is, your Honor, and the government is

16    not making any motion at this time for remand.  He has been

17    completely compliant with his conditions.

18            THE COURT:  All right.  Bail continued as previously

19    set.  Any applications can be taken up with Judge Gardephe.

20            Obviously, Mr. Trujillo, if you get in any trouble

21    between now and your sentencing date, that can't possibly help

22    you at sentencing, so continue to be compliant with bail.

23            Anything else from either side?

24            MS. GERACI:  Not from the government.  Thank you, your

25    Honor.

G3O7TRUP

1          MS. BROWN:  No, your Honor.

2          THE COURT:  I direct the U.S. attorney's office to

3    obtain the transcript and to present it to Judge Gardephe along

4    with any other paperwork he may require.  With that we are

5    adjourned on this matter.

6          (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25